IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN W. STEEN, B28561, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 25-cv-1044-DWD |
| vs. | ) ) |
| OFFICER LYNN, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff John W. Steen, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Centralia Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by an employee from Southwestern Correctional Center. Plaintiff alleges that while hospitalized after a heart procedure, Defendant Steen interfered with his prescribed medical treatment. Plaintiff's second amended complaint (Doc. 11) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

Plaintiff alleges that in October of 2024 he was sent to St. Louis University (SLU) hospital for heart surgery, including the placement of an aortic valve. (Doc. 11 at 2). After surgery, on October 12, 2024, Defendant Lynn was assigned to sit with Plaintiff at the hospital. When Plaintiff needed to use the restroom, he pressed the nurse call button, the nurse detached his IV lines, and Lynn removed his restraints. (Doc. 11 at 3-4). Upon return to the room, Lynn opted to rearrange and reconnect the IV lines himself instead of summoning the nurse. About 20 minutes later, the nurse that had detached lines returned and realized they were out of order. (Doc. 11 at 4). Lynn admitted to reorganizing them. (*Id.*).

An hour later Plaintiff again asked to use the restroom. On this occasion, Lynn refused to call a nurse and moved the nurse call button out of Plaintiff's reach. Lynn detached and reattached Plaintiff's lines. Eventually, the medical monitors in the room began to beep, but Lynn refused to summon a nurse to investigate the situation. Instead, Lynn simply turned the machinery off. (Doc. 11 at 5). At this point, Plaintiff became stressed about the incident and his heart rate increased. Plaintiff noticed about 30 minutes later that his IV line had leaked a lot of fluid on the floor. He urged Lynn to summon the nurse, and Lynn acquiesced. (Doc. 11 at 5).

The nurse who responded was confused to find the IV machine disabled, so she went to summon the prior nurse to investigate further. (Doc. 11 at 5-6). While the medical staff was away, Plaintiff and Lynn engaged in a conversation during which Lynn tried to minimize his conduct. Plaintiff's stress increased. Plaintiff alleges that during his

conversation with Lynn he asked for Lynn to seek a different officer to sit with him, but Lynn then "retaliated" by refusing and insisting Plaintiff did not get to decide who accompanied him. (Doc. 1 at 6-7). When medical staff returned Lynn attempted to deny his conduct but eventually admitted that he manipulated the machine. The whole encounter increased Plaintiff's heart rate and stress level, and one of the nurses repeatedly tried to comfort him and encouraged him to calm down because his increased anxiety and heart rate was a risk for his health after his surgery. (Doc. 1 at 6).

Plaintiff believes that medical staff contacted the prison because within 2 hours a replacement arrived for Lynn. In the meantime, Plaintiff alleges that Lynn tried to coerce him to misrepresent what had transpired. (Doc. 1 at 7-8). He claims Lynn also tried to coerce medical staff about the events, but they simply informed him the machines he tampered with were monitored and would have accurate records of what transpired. (Doc. 1 at 8-9). Plaintiff alleges that the whole episode led to acute stress, anxiety and panic attacks, and tachycardia.

A doctor later told Plaintiff that he believed complications he experienced after the surgery were related to the acute stress and other physical symptoms. The doctor prescribed a medication that is used as a last resort for recurrent tachycardia, but Plaintiff alleges that within a week he was re-admitted for congestive heart failure. He was required to undergo another surgery. Plaintiff alleges that the additional medication that was prescribed was a contributing factor in his need for a second surgery. (Doc. 11 at 9-10). Plaintiff seeks monetary compensation. (Doc. 11 at 11-13).

Based on the allegations in the Complaint the Court designates the following Claims:

**Claim 1:** **First Amendment retaliation claim against Defendant Lynn for his conduct on October 12, 2024;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Lynn for his conduct on October 12, 2024;**

**Claim 3:** **State law battery claim against Defendant Lynn for his conduct on October 12, 2024.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). "To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Then

the burden shifts to the defendant to rebut plaintiff's prima facie showing by establishing that "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id.*

Inmates retain a First Amendment right to complain about prison staff, whether orally or in writing, but only in ways consistent with their status as prisoners. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987). However, name calling, backtalk, or arguments are not protected speech. *See e.g., Caffey v. Maue*, 679 Fed. App'x 487, 490-91 (7th Cir. 2017); *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) (finding an inmate engaged in unprotected backtalk when he insisted on talking to a lawyer after a guard said no).

Here, Plaintiff alleges that Lynn engaged in a campaign of harassment and retaliation after Plaintiff asked him to seek a replacement officer to sit with him at the hospital. By Plaintiff's own description of events, the conversation between he and Lynn devolved into a shouting match. Ultimately, it does not appear Lynn had any further control over the care that Plaintiff received, and Lynn was replaced shortly thereafter by another officer. Against this backdrop, the Court does not find a clear chain of retaliation in the form of protected speech, an adverse action, and a link between the two. Claim 1 will be dismissed as insufficiently pled.

By contrast, Claims 2 and 3 are sufficient to proceed. Plaintiff alleges that Lynn made unsupported medical decisions about his care, including touching the medical devices connected to him, and causing discrete physical harms. He claims that in the midst of these events, nurses in the room made it clear that Plaintiff needed to calm down, and that anything that raised his stress level was a risk factor. Plaintiff claims that his

increased heart rate and stress level that resulted from Lynn's conduct ultimately necessitated an additional medication and led to a second surgery. These allegations are sufficient to proceed against Lynn.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 2-3** survive against Defendant Lynn and **Claim 1** is dismissed without prejudice.

The Clerk of Court is **DIRECTED** to prepare for Defendant Lynn: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 11), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

**DATED: October 14, 2025**

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.